IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**CHRISTOPHER S.,**[1]

   Plaintiff,          Civ. No. 6:19-cv-00473-CL

      v.          **OPINION AND ORDER**

**COMMISSIONER,**
**SOCIAL SECURITY ADMIN.**

   Defendant.

---

MARK D. CLARKE, Magistrate Judge.

  Plaintiff Christian S. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("SSA") denying his applications for Title II Disability Insurance

Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI") pursuant to 42 U.S.C.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the
last name of the non-governmental party or parties in this case.

§§1381a and 1382c(a)(3)(A). For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED for an immediate award of benefits.

## BACKGROUND[2]

Plaintiff was born in March 1971. Tr. 176. He completed high school through the tenth grade and attended special education courses based on a learning disorder. Tr. 130, 553. He has prior work experience as a well driller, bakery helper, warehouse worker, maintenance worker, janitor, ranch hand, and hospital cleaner. Tr. 32. In his application material and at his hearings, Plaintiff alleged disability due to fetal alcohol syndrome, "autism spectrum d/o," degenerative disc disease, leg tremors, depression and anxiety, muscle spasms, and migraine headaches. Tr. 53, 87, 177.

## PROCEDURAL BACKGROUND

This case has a relatively extensive procedural history. Plaintiff originally filed claims for DIB on April 19, 2010, and SSI on April 29, 2010, both identifying the disability onset date of January 15, 2007. Tr. 15. His claims were denied initially and on reconsideration in 2011. Following his first ALJ hearing, the ALJ issues an adverse decision on September 13, 2012. Tr. 240-51. Plaintiff appealed the decision to the Appeals Council, who remanded the case for further proceedings. Following another ALJ hearing and a supplemental hearing which included the appearance and testimony of a medical expert ("ME"), a second adverse decision issued on April 6, 2015. Tr. 265-80. Plaintiff appealed the decision, and the Appeals Council once again remanded the case for further proceedings. A third hearing convened, and the ALJ subsequently issued another adverse decision on April 4, 2018. Tr. 15-35. The Appeals Council denied review of the

---

[2]The following recitation constitutes a summary of the pertinent evidence within the Administrative Record and does not reflect any independent finding of fact. Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein.

third decision, which became the final decision of the Commissioner of Social Security. Plaintiff

now appeals to this Court.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining

whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r.*

*Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R.

§§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of

questions:

1.     Is the claimant performing "substantial gainful activity" (SGA)? 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.     Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.     Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the     claimant     is     disabled.     20     C.F.R.     §§ 404.1520(a)(4)(iii),

416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

    a.   The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" ("PRW") with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her PRW, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the

claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the above analysis, the most recent ALJ made the following findings:

1. Plaintiff has not engaged in SGA since the alleged onset date, January 15, 2007. Tr. 19.

2. Plaintiff has the following severe impairments: degenerative disc disease, lumbar spondylosis, lumbago, cervicalgia, mild pervasive developmental disorder, chronic low-grade depression, and posttraumatic stress disorder. *Id.*

3. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 20.

4. Plaintiff has the RFC to perform medium work except for the following limitations: "[H]e can lift, carry, push and pull 40 pounds occasionally and 25 pounds frequently; can stand and walk for six hours total in an eight-hour workday; he can sit for six hours total in an eight-hour workday; can frequently climb ramps and stairs; should not climb ladders, ropes, or scaffolds; can occasionally stoop and crouch; should be in occupations involving only simple, routine, and repetitive tasks at no greater than SVP [Specific Vocational Preparation] 2 level; should be require[d] to make only simple, routine work decisions; can have occasional interactions with the general public and with coworkers; and can accept supervision but should be in a work environment with few changes to the work setting." Tr. 21-22.

5. Plaintiff is unable to perform an past relevant work. Tr. 32.

6. Platintiff was born on March 22, 1971 and was 35 years old on the alleged disability onset date, which is defined as a younger individual age 18-49., *Id.*

7. The claimant has a limited education and can communicate in English. *Id.*

8. Transferability of job skills is not an issue because the claimant's past relevant work is unskilled. *Id.*

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform, such as machine packager, hand packager, small products assembler, hand packager and inspector, and production assembler. Tr. 32-33.

Consequently, the ALJ concluded Plaintiff is not disabled as defined by the Social Security Act. Tr. 35.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Where the evidence before the ALJ is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff presents the following issues on appeal:

1. Did the ALJ properly evaluate Plaintiff's subjective symptom testimony?

2. Did the ALJ properly evaluate the lay witness testimony of record?

3. Did the ALJ properly evaluate the medical source opinions of record?

4. Did the ALJ properly include in the RFC all Plaintiff's relevant functional limitations?

5. Is the ALJ's step five finding proper?

For the following reasons, I find the ALJ improperly evaluated the record evidence and provided legally insufficient reasons to undermine key findings. The ALJ's decision is, therefore, reversed.

## I.    Subjective Symptom Testimony

Due to the extended period over which this claim has proceeded, Plaintiff has provided a range of subjective symptom allegations in his application materials dating to 2010, as well as allegations throughout his three ALJ hearings over the years. Accordingly, the Court will summarize the key symptom allegations that are relevant to the most recent non-disability decision.

In 2010, Plaintiff completed an adult function self-assessment as part of the claim application process. *See* Tr. 570-77. At that time, he asserted he was homeless. Tr. 570. He indicated that the conditions which most impeded his ability to work were discomfort in sitting or standing for periods of time, in addition to difficulty getting along with others and persisting in tasks, which resulted in being fired from jobs or simply leaving jobs. *Id.* He engaged in few activities during the day in order to rest his back. Tr. 571. He indicated his wife cared for their daughter. *Id.* He indicated he had to change positions throughout the night due to back pain, leaving him feeling unrested. *Id.* He needed assistance putting on his pants and shoes. Tr. 572. He could prepare frozen meals. *Id.* He needed assistance completing household chores. Tr. 573. Plaintiff indicated he never got a driver's license, so walking was his usual mode of travel. *Id.* He indicated that he no longer engaged in pleasurable activities such as riding his bike due to pain, depression, and lack of self-worth. Tr. 574. Plaintiff noted he avoided people because he "hate[d]" being around others but was able to go to the grocery store and visit his in-laws once a month. *Id.* Plaintiff also noted difficulties with the following: lifting, squatting, bending, standing, reaching, walking, sitting, climbing stairs, memory, completing tasks, concentration, understanding, following instructions, and getting along with others. Tr. 575. He explained that he became angry because he felt "nobody understands me." *Id.* Plaintiff also indicated he could not tolerate stress. Tr. 576. Finally, Plaintiff described pain in his knees, back, and neck, as well as significant fatigue. Tr. 594.

In his 2012 hearing, Plaintiff testified that he was unable to work due to his back pain, secondary to herniated discs and nerve damage. Tr. 158. He asserted significant sleep disturbance due to back and joint pain and described needing assistance getting to the bathroom, showering, and dressing himself. Tr. 158-59. Plaintiff told the ALJ he was unable to bend and that he experienced numbness in his legs which made basic ambulation difficult. Tr. 159. Plaintiff

described mental impairments also, including PTSD and "Asperger's syndrome and high functioning autism." *Id.* He described difficulty in filling out forms and reading. Tr. 160. He testified that he was antisocial because he had difficulty understanding others' speech. *Id.* He expressed significant limitations in performing household chores. Tr. 161. He stated he spent most of his day seated in a chair but was able to engage with his children from that position. *Id.* He described significant limitations in standing and walking, and that he used a cane. Tr. 164-65. He also described losing interest in pleasurable activities due to depression. Tr. 165. Plaintiff endorsed medication side-effects such as fatigue and confusion. Tr. 168-69. He indicated he was advised to do physical therapy, which he felt was not helpful, but discontinued it after a few sessions when his insurance ran out. Tr. 169.

Plaintiff's first 2014 hearing predominantly involved testimony by a Social Security Administration ME rather than symptom testimony by Plaintiff. *See* Tr. 125-54. At Plaintiff's second hearing in 2014, he provided additional symptom testimony. For instance, Plaintiff stated his physical condition had deteriorated in the three months since his last hearing. Tr. 87. He also described "horrible muscle spasms all the way up to my shoulders giving me migraine headaches." Tr. 87-88. He testified that his access to medications was limited by his insurance. *Id.* He noted trembling and "constant shakes" due to nerve damage. Tr. 89. He reiterated that his attempt at physical therapy was interrupted when his insurance refused to cover it, but that the therapy seemed to exacerbate his physical pain and inflammation. Tr. 89-90. He stated that he used a cane, although it was not prescribed. Tr. 90-91. Plaintiff described his day as waking, having coffee, and attending medical appointments. Tr. 91-92. He testified that he was able to do some laundry, and help his children get ready for school. Tr. 94. Plaintiff also described taking daily naps, walking to and from his mailbox, performing minor cleaning around the house, and assisting with cooking and

cleaning up dinner. *See* Tr. 96-101. Plaintiff clarified that he could not perform the activities mentioned above on a daily basis because his symptoms waxed and waned. Tr. 104. He described resting from four-to-six hours per day. Tr. 105.

Plaintiff provided some additional symptom testimony at his most recent hearing in 2017. He explained that his leg tremors had worsened, and that he had been prescribed new medication to treat them. Tr. 53. Plaintiff stated that one of his medications was proving effective in addressing some of his sleep problems. Tr. 54. He also indicated that medication for depression, Wellbutrin, seemed somewhat helpful, but that it also caused moodiness and drowsiness. Tr. 55. Plaintiff also explained that he was taken off some pain medications because he violated his "pain contract." Tr. 56. Plaintiff testified that he felt his emotional issues continued to hinder his well-being. Tr. 57. Plaintiff further explained that he is less and less able to perform household chores including loading the dishwasher and laundry machines. *Id.* He now uses a cart to get around at the grocery store. *Id.* Plaintiff appeared to have some difficulty either understanding or properly responding to the ALJ's questions at times during the hearing. *See* Tr. 58-61.

The ALJ, in her 2018 decision, recounted in detail Plaintiff's medical history, interspersed with Plaintiff's subjective complaints throughout the adjudication period. *See* Tr. 22-28. The ALJ determined that Plaintiff's complaints were unsupported or inconsistent with the objective medical evidence of record and/or "debilitating" impairments, inconsistent with his activities of daily living ("ADLs"), and inconsistent with the relatively conservative medical treatment he received overall. *Id.*

Where, as here, a claimant's medically determinable impairments reasonably could be expected to produce some degree of the symptoms complained of, and the record contains no evidence of malingering, the ALJ may reject symptom testimony only by offering specific, clear

and convincing reasons for doing so. *Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020) (citing *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)). Thus, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493-94 (9th Cir. 2015) (citation omitted); *see* Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017) ("We will explain which of an individual's symptoms we found consistent or inconsistent with the evidence in his or her record and how our evaluation of the individual's symptoms led to our conclusions.").

Plaintiff contends that none of the rationales provided by the ALJ for rejecting his symptom testimony meets the clear-and-convincing legal standard. His first argument is that the ALJ failed to provide clear-and-convincing reasons supporting her finding that the subjective symptom allegations were inconsistent with the objective medical evidence. Pl.'s Br. 20. Generally, Plaintiff argues that the ALJ failed to identify with specificity which of Plaintiff's symptom complaints were undermined, or how the objective evidence undermined them. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (ALJ's findings must be sufficiently specific to permit a court to conclude the ALJ did not arbitrarily reject a claimant's testimony).

By way of example, Plaintiff identifies the ALJ's summary of a 2012 MRI of his lumbar spine showing "disc protrusion at L4-5 with mass effect on the cauda equina and the right L5 nerve root in the lateral recess, mild disc bulge at L5-S1," as well as "decreased range of motion, reports of tenderness, antalgic gait." Tr. 24-25, 968-69. Plaintiff argues, and the Court agrees, the ALJ failed to identify how these 2011 clinical findings undermined Plaintiff's testimony other than in generalized terms. In this instance, the ALJ generally concluded that, in terms of physical impairments and limitations, Plaintiff's decreased ROM, occasional antalgic gait, and decreased

lower extremity strength supported some functional limitations, but that the record did not support greater limitations than those set forth in the RFC, "or to the extent of debilitation he alleges." Tr. 26. Such generalizations simply do not meet the clear-and-convincing legal standard. *See, e.g., Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) ("It's not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible.") (citation omitted).

The ALJ additionally found Plaintiff's symptom allegations inconsistent with his reported ADLs. Specifically, the ALJ noted Plaintiff was able to prepare simple meals in 2010, could perform household chores, walked for exercise, could use public transportation to travel, could venture out and shop on his own, assisted his children with homework, and engaged in hobbies such as building models. Tr. 27-28. An ALJ may invoke ADLs to undermine a claimant's symptom testimony if, (1) the activities contradict such testimony, or (2) if the ADLs meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, however, although the ALJ found the ADLs inconsistent with his allegations, the ALJ failed to identify what testimony was undermined and why. In response, the Commissioner simply reiterates the ALJ's findings, but does not identify the testimony the activities undermined, aside from the sweeping statement that the ALJ's finding was reasonable because they did not depict totally debilitating impairments. Def.'s Br. 16-17. But a claimant's impairments need not foreclose all activities. *See Molina v. Astrue*, 674 F.3d 1104, 1122-23 (9th Cir. 2012) (claimant need not be relegated to vegetating in a dark room to remain eligible for benefits) (citation omitted). The error remains: the ALJ failed to provide specific, clear-and-convincing reasons why the ADL's were inconsistent with plaintiff's testimony.

The ALJ also identified conservative treatment as a reason to question the veracity of plaintiff's symptom allegations. For example, the ALJ found plaintiff's "conservative treatment recommended . . . and the modest findings . . . noted on examination, are not consistent with the allegations of debilitating symptoms and limitations, and do not support greater limitations than those contained in the [RFC] set forth above." Tr. 25. Also, the ALJ found Plaintiff's mental health symptoms were questionable because he took only two medications, Wellbutrin and Trazadone, to treat his depression and anxiety. Tr. 26. Although improved functioning with treatment may undermine symptom allegations, it is not clear what allegations were undermined here. The Commissioner argues that Vicodin helped his functioning, but Plaintiff's access to Vicodin was restricted following a breach of his pain contract, and pain returned thereafter. Tr. 1023-26, 1033-34. A subsequent examination revealed decreased ROM, tenderness to touch, decreased motor strength, a positive straight leg test, and antalgic gate. Tr. 1038-39. Where a plaintiff does not have access to effective treatment, the mere potential of using such treatment is not a valid reason to discount testimony. *See Orn*, 495 F.3d at 638 (rationale invalid where a claimant could not afford treatment); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (rationale invalid where claimant provides a good reason for not seeking more aggressive treatment than that received). As such, the ALJ's finding regarding plaintiff's physical impairments is squarely contradicted by the record medical evidence.

As to Plaintiff's mental health impairments, the Commissioner argues Plaintiff discontinued his relevant medications and did not consistently report depression or anxiety. Def.'s Br. 13 (citing Tr. 955). However, although Wellbutrin is not listed in late July 2012, Plaintiff's doctor opined the following month that "medical *and mental* health issues make it difficult for [patient] to perform ADLs and performing meaningful job duties." Tr. 956 (emphasis added). The

doctor noted the same in December 2010. Tr. 958. An examining doctor observed significant

mental health symptoms in May 2010 and diagnosed major depressive disorder in addition to other

mental health conditions. Tr. 837, 839. All the same, it appears Plaintiff did not take Wellbutrin

for a time within the adjudication period but was apparently using it again by the time of the 2017

hearing. Tr. 54-55. Plaintiff reported the drug was effective in some respects, but also identified

significant side effects. *Id.* As such, although there may be some evidence Plaintiff's mental health

symptoms may not have been severe enough alone to be disabling, Plaintiff provided a good reason

not to take the medication, and, moreover, the ALJ failed to identify what symptom allegations

were undermined. The rationale cannot be said to be clear-and-convincing on this record.

Overall, although the ALJ provided a thorough review and summary of the medical record

and identified some rationales that might be valid in undermining the veracity of his physical and

mental complaints, the ALJ's vague findings are simply not specific enough to meet the clear-and-

convincing bar. The ALJ's failure to do so is clear error.

## II.    Medical Opinion Evidence

An ALJ must consider the acceptable medical source opinions of record and assign

weight to each. 20 C.F.R. §§ 404.1527(c), 416.927(c). In this respect, an ALJ is responsible for

resolving conflicts and ambiguities in the medical evidence. *Reddick v. Chater*, 157 F.3d 715,

722 (9th Cir. 1998). To reject the contradicted opinion of a treating or examining physician, the

ALJ must provide specific and legitimate reasons for doing so. *Lester v. Chater*, 81 F.3d 821,

830-31 (9th Cir. 1995). The opinion of a non-examining medical consultant alone does not

constitute substantial evidence sufficient to reject the opinion of a treating or examining

physician. *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999).

"An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough

summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (citing *Reddick*, 157 F.3d at 725).

Plaintiff assigns error to the ALJ's evaluations of the following medical sources: David M. Freed, Ph.D., Robert McDevitt, M.D., and Raymond Baculi, M.D. The Court addresses each in turn.

### a. Dr. Freed, Examining Psychologist

Dr. Freed provided a consultative neuropsychological examination in May 2010. Tr. 835-42. Dr. Freed took a medical history, administered a battery of tests, and offered diagnoses and prognoses related to Plaintiff's mental health. To summarize, the doctor noted Plaintiff took special education courses in school, was unemployed, complained of several physical ailments causing pain, had a history of Fetal Alcohol Syndrome, and had a family history of mental illness. Tr. 836. Plaintiff "presented as an anxious and depressed male . . . [who] tended to avoid eye contact and appeared to have some difficulty with nonverbal communication . . . and social reciprocity." Tr. 837. Dr. Freed detected evidence of a speech impediment and "a restricted range of affect." *Id.* Plaintiff's test results were consistent with learning disabilities and Asperger's Disorder. Tr. 838. Plaintiff's diagnoses included Pervasive Developmental Disorder, without Asperger's Disorder; PTSD; Major Depressive Disorder, recurrent, moderate; Attention Deficit Hyperactivity Disorder, combined type; and Learning Disorder, NOS. Tr. 839. The doctor explained that Plaintiff has difficulty with social interactions and experiences "functional impairments in self direction, work skills, interpersonal skills, and communication skills," as well as "significant symptoms of depression and anxiety." Tr. 840. Dr. Freed opined Plaintiff would benefit from job coaching and supportive feedback, that his "impairment in social skills is a significant barrier to competitive employment," that he should consider applying for Social Security benefits and other state

disability services, and that he may want to consider furthering his education in a setting that provided special learning accommodations. Tr. 841.

The ALJ summarized Dr. Freed's medical findings and accorded his opinion only "little weight." Tr. 30. The ALJ supported his finding by explaining the medical opinion was vague, based on both Plaintiff's physical and mental impairments, largely based on subjective symptom reports, and inconsistent with treatment records depicting appropriate behavior and social interaction with his providers. *Id.*

Plaintiff asserts the ALJ's decision to accord little weight to Dr. Freed's opinion is erroneous. The Court finds no support for the ALJ's finding that Dr. Freed's opinion is vague. The report included a summary of Plaintiff's medical history and complaints, the doctor's own observations of Plaintiff's affect, and a range of objective medical tests to support his diagnoses and prognoses. The rationale fails to meet the specific-and-legitimate legal standard.

As regards to the ALJ's second rationale, the Court is not aware, nor does the Commissioner identify, any regulation, rule, or Ninth Circuit precedent to support the proposition that an examining psychologist cannot discuss a Plaintiff's physical impairments in conjunction with a mental health assessment. Furthermore, Dr. Freed's evaluation was not based on Plaintiff's physical impairments: his diagnoses and prognoses were almost entirely based on mental impairments alone. The ALJ's contrary finding is erroneous.

Similarly, the ALJ's assertion that Dr. Freed's evaluation is overly reliant on Plaintiff's subjective complaints is often invalid in the context of psychological assessments, as such assessments are typically based on subjective complaints. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) ("the report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology") (citation and internal brackets omitted). This

is because "[d]iagnoses will always depend in part on the patient's self-report, as well as on the clinician's obesrvations of the patient . . . such is the nature of psychiatry." *Id.* (citation omitted). The ALJ's finding is even less persuasive here, where the psychiatrist performed numerous objective tests which formed the basis of his opinion.

The ALJ also determined Dr. Freed's opinion is inconsistent with treatment records wherein Plaintiff demonstrated normal behavior and social interactions. But Dr. Freed's conclusion was based on his own personal observations. Moreover, even the ALJ determined Plaintiff has "severe" impairment in these areas. Tr. 29.

Finally, the ALJ found Dr. Freed's opinion internally inconsistent. However, the ALJ assigned great weight to Dr. Kruger's opinion, in part because it was *consistent* with Dr. Freed's. As such, it was the ALJ's findings that were internally inconsistent.

The Commissioner provides no persuasive rebuttal to Plaintiff's assignments of error relative to Dr. Freed's opinion. Thus, for these reasons, none of the rationales offered by the ALJ to discount Dr. Freed's opinion meets the requisite legal standard.

### b. Dr. McDevitt, Medical Expert

Dr. McDevitt appeared and provided medical expert testimony at Plaintiff's first 2014 hearing. *See* Tr. 128-49. Dr. McDevitt testified that he had reviewed mental health records form a Dr. Pree and notes by Dr. Kruger. Tr. 130. Although the ALJ accorded great weight to the ME's opinion overall, Plaintiff asserts the ALJ erroneously omitted a key part of the opinion related to Plaintiff's marked limitation in the ability to "respond to the usual work situations and changes in a routine work setting." Pl.'s Br. 10-12 (quoting Tr. 137). Specifically, the ME opined that Plaintiff "would probably have what they call a meltdown or become upset if he was given some tasks that he had not been prepared for . . . he wouldn't be the kind of person to manage a crisis situation."

Tr. 140. The ME further stated that Plaintiff "needs job coaching and he needs rehab and could possibly work with somebody helping him to develop better work habits." Tr. 141. Nevertheless, the ME concluded that although Plaintiff *feels* he is disabled, there is no psychological evidence that "he is . . . disabled or dysfunctional" purely in terms of his mental impairments. Tr. 143-44.

Plaintiff argues that the ME's testimony about a marked limitation in "the ability to the ability to respond to usual work situations and changes in a routine work setting" renders him disabled under SSR 85-15, 1985 WL 56857 (Jan. 1, 1985). The rule provides:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworker, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

*Id.* at *4. The ALJ noted Plaintiff's argument concerning SSR 85-15 but noted that the ME's

> [T]estimony was contradictory on this point. He stated that the claimant would have marked difficulties in his ability to respond to usual work situations and changes to a routine work setting . . . however, Dr. McDevitt stated that the claimant would need tasks that he knew routinely and could do repeatedly and he would be unable to manage crisis situations . . . the context makes clear that [the ME] meant the claimant would be able to function in a routine and repetitive work setting but would have difficulties in a non-routine work setting."

Tr. 30-31. The ALJ concluded that "the more detailed information regarding the claimant's limitations is far more useful than broad statements, even if those broad statements mirror the language of SSR 85-15," and gave little weight to the ME testimony that Plaintiff would have "a substantial loss in the ability to deal with changes in a routine work setting." Tr. 31. In support of the ALJ's finding, the Commissioner argues that even if there is more than one rational

interpretation of the ME's testimony, the Court must uphold the ALJ's rational interpretation. Def.'s Br. 26 (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

Plaintiff contends that the ME's statement that Plaintiff would "do best in a repetitive work situation in which he could use his manual skills" does not squarely contradict the testimony that Plaintiff would have marked limitation in the "basic work-related activity" of "respond[ing] to usual work situations and changes in a routine work setting." *See* Pl.'s Reply 2-3.

Based on the ME's testimony as a whole, the Court agrees that the ALJ's finding is a rational interpretation of the medical evidence, as the ME did not feel Plaintiff had any disabling mental health symptoms, despite his difficulties in adjusting to usual work settings. In the second 2014 hearing, the VE testified that jobs existed in the national economy which a hypothetical worker with Plaintiff's limitations—including a limitation to work in an "environment with few changes in the work setting"—could perform. Tr. 118. But, as the ALJ explained in the decision, SSR 85-15 "is not intended to set out any presumptive limitations or disorders[.]" SSR 85-15, at *5. Moreover, the Ninth Circuit holds that SSR 85-15 "provides guidance only for cases in which the claimant asserts solely nonexertional impairments." *Sandgathe v. Chater*, 108 F.3d 978, 981-82 (9th Cir. 1997) (citation and internal quotation marks omitted). Under *Sandgathe*, SSR 85-15 is not disability-determinative in this case because it involves both exertional and nonexertional impairments. As such, the ALJ did not err in giving diminished weight to the relevant portion of the ME's testimony.

### c. Dr. Baculi, Treating Physician

Plaintiff argues the ALJ also erred in her assessment of the medical opinion of treating physician Dr. Baculi. Dr. Baculi opined in 2010 that Plaintiff would be limited to lifting up to 10 pounds frequently, 40 pounds occasionally, sitting for four hours per day, and standing and

walking two hours each per day, and limited his work to 15 hours per week. Tr. 917-18. Dr. Baculi indicated the modified restrictions would persist for approximately one year. *Id.* The doctor provided a second opinion in 2014, which limited Plaintiff to three hours per day of sitting, a combined total of two hours per day of standing or walking, lifting no more than 10 pounds occasionally, and stated that plaintiff would need to recline during the workday and be expected to miss more than four days per month. Tr. 1016-19.

The ALJ rejected the 2010 opinion based on the rationale that Dr. Baculi did not provide any explanation or objective support for the limitations assessed and that the limitations were temporary. Tr. 28. Although the doctor's explanations were brief, he did indicate the limitations stemmed from neck and back pain, PTSD, Asperger's Syndrome, and autism. Tr. 917. Even assuming the limitations were not "temporary" in the context of Social Security disability law, an ALJ is nevertheless not required to adopt the opinion of a doctor that is "brief, conclusory, and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228. Dr. Baculi's 2010 opinion is certainly brief, and it is wholly unsupported by any explanation or identification of objective medical findings which substantiate the limitations he assessed. As such, the ALJ did not err in giving the 2010 opinion diminished weight.

The ALJ rejected Dr. Baculi's 2014 medical opinion on similar grounds. Specifically, she rejected it because the assessed limitations were poorly explained or supported by objective medical findings and instead relied on subjective complaints of limitations in tenderness, decreased ROM, gait difficulties, and "slightly decreased strength in the left lower extremity." Tr. 29. The ALJ further found the medical opinion was "devoid of findings" supporting Dr. Baculi's assessed lifting, carrying, and manipulative activities because upper extremity medical findings were

normal, and there was "no support in the record for a need to recline or for the absences" the doctor indicated. *Id.*

However, the ALJ's rationales are not supported by substantial evidence. For example, Dr. Baculi explicitly indicated that Plaintiff would need more break periods than normal to relieve pain arising from his impairments. Tr. 1016. He indicated Plaintiff would require the use of a cane because he does not have the ability to ambulate effectively. Tr. 1017. Dr. Baculi identified Plaintiff's limitations arose from lumbar disc disease and cervical disc disease, which were supported by abnormal medical imaging findings. Tr. 1019. And he indicated Plaintiff's limitations had persisted for "several years, worse since 2010." *Id.* Further, as Plaintiff explains, Dr. Baculi's treatment records demonstrate decreased strength in the left lower extremity with antalgic gait—such findings are objective medical findings, not subjective findings. Tr. 854, 963, 989. As noted, Dr. Baculi identified objective medical imaging which supported his assessed limitations. Tr. 968, 1019. The Commissioner provides no substantial counterargument on these points. Def.'s Br. 23-24. The ALJ failed to provide adequate support for affording little weight to the 2014 medical opinion, and as such, the finding is erroneous.

### d. Mary Ann Westfall, M.D., State Agency Reviewing Physician

Plaintiff argues the ALJ improperly assigned great weight to the opinion of Dr. Westfall, who generated her 2011 medical opinion solely on review of the medical record. Plaintiff asserts that although Dr. Westfall's opinion was given great weight, it was largely based on the opinion of Dr. Radecki, which the ALJ did not accord great weight. Further, Plaintiff argues that because Dr. Radecki's opinion is inconsistent with all the other medical opinions of record, it is entitled to no weight, and therefore it follows that Dr. Westfall's opinion cannot be properly assigned great weight. Pl.'s Br. 14-15. However, although the ALJ did not assign specific weight to Dr. Radecki's

2010 opinion (*See* Tr. 843-47), the ALJ did note that Plaintiff's "generally unremarkable examination findings noted by Dr. Radecki are not consistent with the claimant's allegations of debilitating symptoms and limitations." Tr. 24. However, the ALJ concluded that Dr. Radecki's opinion was not worthy of great weight because it did not identify any limitations. Tr. 29. As such, the Court agrees that Dr. Radecki's opinion was essentially rejected. Similarly, although the ALJ purported to give Dr. Westfall's opinion great weight, it was rejected in part because the ALJ explicitly found that Dr. Westfall's assessed limitations did not properly encapsulate all of Plaintiff's limitations. Tr. 28 ("[T]he record as a whole, including evidence submitted at the hearing level, supports greater and additional limitations[.]"). Accordingly, it is unclear why the opinion was given great weight. Because the opinion of a reviewing physician alone does not constitute substantial evidence, and Dr. Radecki's opinion on which it was based was rejected, Dr. Westfall's opinion should not have been given great weight, if any at all. *See Morgan*, 169 F.3d at 602 ("The opinion of a nonexamining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of an examining or treating physician."). The Commissioner does not provide any argument on the issue. As such, the Court agrees with Plaintiff's assertion that crediting Dr. Westfall's opinion over the opinion of Plaintiff's examining and treating physician is legal error.

## III.    Lay Witness Testimony

Plaintiff assigns error to the ALJ's treatment of the lay witness statements of record, which includes evidence provided by Elizabeth Graham, a vocational counselor, and Bonnie O., Plaintiff's mother-in-law. An ALJ must consider statements provided by lay witnesses, and may reject them only for specific, germane reasons. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009). Nevertheless, if an ALJ failed to provide such reasons, the error may be harmless where

the ALJ has provided clear and convincing reasons to reject substantially similar symptom testimony provided by the claimant. *Molina*, 674 F.3d at 1122.

The ALJ chose not to assign great weight to Ms. Graham's statement because it was overly reliant on Plaintiff's subjective complaints, and her opinion that he would benefit from vocational rehabilitation was not consistent with limitations so severe as to prevent all work activity. Tr. 31. However, as described above regarding Dr. McDevitt's opinion, it was appropriate to credit Plaintiff's because subjective complaints are alid bases for evaluating mental health allegations. And further, Dr. McDevitt's opinion was based on clinical testing. *Supra.* Moreover, Ms. Graham's assertion that Plaintiff would benefit from vocational rehabilitation is consistent with the ME's assessment. Moreover, lay witness testimony must not be discounted simply because it does not provide objective support for the limitations assessed, or that it does not show that the limitations are so severe as to preclude all work activity—there is no question that benefits may be, and often are, awarded although an applicant is not precluded from all work activity. Rather, such testimony about a claimant's symptoms and ability to work is competent evidence. *Stout v. Comm'r, Social Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Here, the ALJ did not provide valid reasons to reject it.

The ALJ also rejected the lay statement of Bonnie O., Plaintiff's mother-in-law. Tr. 31-32. Notably, Bonnie O. indicated Plaintiff did not deal well with stress or changes in routines, consistent with the opinions of Drs. Baculi, McDevitt, and Freed, which the ALJ improperly rejected. Similarly, as explained above regarding Plaintiff's symptom allegations, the fact that they were based on a combination of mental and physical impairments is simply not a valid reason to discount lay testimony. The ALJ erred in rejecting Bonnie O.'s lay statement.

## IV.    Remand for Payment of Benefits[3]

By statute, a reviewing court "shall have the power to enter a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security." 42 U.S.C. § 405(g). Accordingly, courts may remand a case for immediate payment of benefits without further administrative proceedings. *Garrison*, 759 F.3d at 1019. In the Ninth Circuit, a Social Security case must be remanded to the Commissioner if the ALJ's decision is based on legal error or unsupported by substantial evidence. *Id.* Courts in the Ninth Circuit determine whether a case should be remanded for additional proceedings or immediate payment of benefits pursuant to the "credit-as-true" inquiry, whereby the court determines that (1) the ALJ's decision is invalid on legal or evidentiary grounds; (2) the administrative record is fully developed and further proceedings would serve no useful purpose; and if (3) crediting the improperly discredited evidence as true, an ALJ on remand would be compelled to find a plaintiff disabled. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (citations omitted).

Here, for the reasons described above, the ALJ erroneously rejected relevant symptom testimony provided by Plaintiff and the lay witnesses, and erroneously rejected probative medical opinions. Thus, the first step of the inquiry is met. The Court finds that the second step of the inquiry is also met. This case has involved two ALJ decisions and four administrative hearings which have taken place over a period of years. The Appeals Council has remanded the case twice. There are multiple medical opinions of record, and ample symptom testimony was provided by

---

[3] Based on the errors discussed in evaluating symptom testimony provided by Plaintiff and the lay witnesses, as well as errors in evaluating the medical opinions of record, the Court cannot conclude that the RFC was based on substantial evidence, and therefore concludes remand is required. Accordingly, the Court declines to separately address Plaintiff's assignments of error relative to the RFC formulation, or the resultant step five finding to which Plaintiff assigns further error.

Plaintiff throughout the extensive procedural history. Two lay witness opinions supplement the record evidence. In short, the Commissioner has been provided many opportunities to address errors in this matter. As the Ninth Circuit has repeatedly stated, "[a]llowing the Commissioner to decide the issue[s] again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citation omitted). Here, the agency has played its hand over the course of years. The Commissioner does not provide any compelling reason why further proceedings would be useful, other than to say that the medical evidence does not support disability and the ALJ gave multiple reasons for discounting Plaintiff's credibility. Def.'s Br. 30. Those are simply conclusions that the Commissioner has tried, and failed, to establish throughout the long process of this claim. The Commissioner also asserts that the "normal" rule is for a court to remand for further proceedings rather than for payment of benefits. But the numerous hearings, extensive medical opinion evidence, and multiple erroneous decisions in this matter demonstrate that this is not a "normal" case. The Court is not persuaded by the Commissioner's insubstantial arguments that the record is not fully developed.

Credited as true, Plaintiff's symptom testimony suggests he is disabled by virtue of pain, mental health issues that make it difficult to maintain appropriate workplace behavior and attendance, and physical limitations which also prevent him from succeeding in a competitive work environment. Credited as true, the medical opinions of treating physician Dr. Baculi and mental health expert Dr. Freed direct that Plaintiff would not be able to maintain competitive work, and Dr. McDevitt's testimony strongly suggests Plaintiff is unlikely to adequately adjust to normal workplace stressors (although the ALJ did not technically err in weighting his opinion). Further, the discredited symptom testimony and discredited medical opinion evidence is consistent with the lay witness statements which also suggest Plaintiff would be unlikely to maintain remunerative

work in the national economy. Based on the testimony of the VE, Plaintiff's limitations would preclude competitive work, including excessive breaks, absenteeism, the need for a job coach, among others. Tr. 72-73. For these reasons, the Court concludes that Plaintiff is disabled under the Act, and therefore chooses to exercise its authority to remand this case for immediate payment of benefits.

<strong>CONCLUSION</strong>

Based on the foregoing, the decision of the Commissioner is REVERSED and this case REMANDED for immediate payment of benefits.

DATED this 18 day of February, 2021.

MARK D. CLARKE
United States Magistrate Judge